UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JORGE A. NEVAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04-CV-486 WCL |
| | ) | |
| TN TRAILERS, LLC; TN TRAILERS, INC., and THE ALUMINUM TRAILER COMPANY | ) ) ) | |
| | ) | |
| Defendants | ) | |

## OPINION AND ORDER

Presently before the court is defendants, TN Trailers, LLC's ("Trailers LLC"), TN Trailers, Inc.'s (Trailers, Inc.") and Aluminum Trailer Company's ("ATC") (collectively, "the Defendants") Motion for Summary Judgment filed on December 13, 2005. Plaintiff Jorge Nevarez ("Nevarez") responded in opposition on January 12, 2006. Defendants replied on January 26, 2006. Along with their reply, Defendants moved to strike portions of the Plaintiff's Statement of Genuine Issues. Plaintiff promptly responded. Defendants did not reply.

For the following reasons, the Defendants Motions will be DENIED in part and GRANTED in part.

## Summary Judgment Standards

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a

1

motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## FACTUAL BACKGROUND[1]

Defendant Trailers LLC is a cargo trailer manufacturing plant. K-Z, Inc, a non-party to the present litigation, is a travel trailer manufacturing facility located within a mile of Trailers LLC and performed payroll services for Trailers LLC. Defendant ATC was, until April 30, 2004, a competitor of Trailers LLC in the manufacturing of two and four wheeled towable cargo trailers. Trailers, Inc. is a corporate offshoot of ATC and, beginning on April 30, 2004 when ATC purchased the assets of Trailers LLC, conducts the business of Trailers LLC. Plaintiff Nevarez is a naturalized American citizen of Hispanic origin.

In April 2002, Trailers LLC hired Nevarez as an employee in the Maintenance Department.

---

[1] The defendants filed a "Statement of Undisputed Material Facts" which is, in large part, a misnomer. The majority of the facts cited therein as "undisputed" are largely disputed facts and the version provided by the defendants is the version favorable to their case rather than a construction of the record in the light most favorable to the plaintiff. As set forth in the summary judgment standard above, the court shall construe the record favorably to Nevarez and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*

2

Nevarez worked for Trailers LLC until January 12, 2004. Throughout his employment, Nevarez received several hourly raises and additional vacation time. The record does not reflect that Nevarez was ever disciplined by Trailers for performance deficiencies or any other reason. At the time of the events relevant to this lawsuit, Nevarez had been promoted to Maintenance Supervisor.

The events giving rise to Nevarez' discrimination claims unfold as follows: On August 18, 2003, Trailers LLC hired Anthony "Pete" Janatello ("Janatello") as General Manager. Upon assuming his duties, Janatello determined that maintenance and safety issues were not being adequately addressed in the Maintenance Department and that the issues could be addressed with the addition of an employee. As a result, Janatello hired Brian Abbs ("Abbs") on October 27, 2003 to work in the Maintenance Department under Nevarez's supervision.

Nevarez and Abbs did not get along.[2] (Nevarez Dep. at 42). According to Nevarez, whenever he would ask Abbs to do a task, Abbs would not do it. Abbs would refuse to speak with Nevarez and walk away. (*Id.* at 43). Nevarez complained to his supervisor, Plant Manager LaVern Parker ("Parker"), about Abbs refusal to take direction from him. (*Id.*) Parker, in turn, told Nevarez that he would talk to Abbs and resolve the problem. (*Id.*). However, the situation did not improve. (*Id.* at 44). Nevarez complained to Parker at least ten times to no avail. (*Id.*). Likewise, he testified that he tried to speak directly with Abbs but Abbs would walk away from him.

Nevarez testified that on the occasions when Abbs would speak to him, he would tell him that he "would never work for a Mexican." On one occasion, Abbs told Nevarez, "I don't have to work for a Mexican." This occurred within the first month of Abbs's employment, or in

---

[2]This is disputed. Janatello testified that he observed Abbs and Nevarez working together amicably including eating lunch together with another supervisor. Nevarez, according to Janatello, never complained about working with Abbs or about having any difficulties with Abbs.

3

approximately mid-October 2003. (*Id.* at 48-49).

Nevarez reported this incident to Janatello immediately. (*Id.* at 50). Nevarez testified as follows:

> I explained to him what had happened. I told him what Mr. Abbs had told me that he would never work for a Mexican, and I told him that I felt I was being discriminated by him. Pete said that, that wasn't called for, that he would take care of that. He would have a meeting with Lavern Parker, and Mr. Abbs, and get this straightened out.

(*Id.* at 50). Nevarez never heard anything from Janatello regarding his complaint about Abbs nor did he become aware of any investigation into the incident. (*Id.* at 50-51.).[3]

In December 2003, employees of Trailers LLC were informed that negotiations were ongoing for a sale of the company to defendant ATC. At or around the time of the Christmas shutdown in December 2003, Nevarez had a discussion with Janatello wherein he was told that new management had taken over Trailers LLC and that it would be best for Nevarez to transfer to K-Z Incorporated ("K-Z"):

> We came back from shutdown, we got called for a meeting. New people was there and they came –they gave us a meeting saying that they were the new owners of TN Trailers...They were going to have their rules. Anybody that wanted to stay there could stay there. Anybody who wanted to leave, they could leave. And I stay[ed] there...I can't recall the exact date but I was called to Pete Janatello's office, general

---

[3] Janatello recalls the events differently and avers that Nevarez did not report the aforementioned incident to him at all, but that approximately two weeks after Abbs began working, Janatello learned of a rumor circulating through Trailers LLC that Abbs had stated that he did not "want to work for a Mexican." Janatello began investigating this rumor and, to that end, he interviewed both Abbs and Nevarez. Abbs denied ever making a statement of that sort and according to Janatello, Nevarez indicated that no such statement by Abbs had been made directly to him. Janatello testified that he uncovered no evidence to support the rumor that Abbs had made the statement.
  Two weeks after the conclusion of his investigation, Janatello, as a precautionary measure, divided the duties of the Maintenance Department into two areas: Safety and Maintenance. He states that he split up Abbs and Nevarez making Nevarez the Safety Supervisor and Abbs the Maintenance Supervisor. Nevarez, however, contends that this split did not occur at all and that he was always a Supervisor and Abbs was always a subordinate employee.

4

>    manager. And I was told by Pete that these new people that came in, and the new head general manager, used to work at Pace with Mr. LaVern Parker and Mr. Brian Abbs , and I was told that they were close...
>    Pete Janatello's telling me this. And he said that he was going to look out for me and that he was going to transfer me to K-Z...That he had talked to the new general manager of TN – which I don't know his name – and they worked it out already with KZ he said 'Come Monday, you will be transferred; everything will be the same, as to what you're doing here at TN.'"

*(Id.* at 84-85). Janatello disputes that the above conversation occurred and the defendants contend that Nevarez voluntarily "applied" for work at K-Z and was not transferred.

On January 5, 2004, Trailers LLC entered into a management contract with ATC for the management of Trailers LLC in preparation for its sale to ATC. (Respondent's Position Statement to the EEOC, ¶6). Upon consummation of the sale on April 30, 2004, Trailers LLC became Trailers Inc.

As noted previously, Trailers LLC contracted with K-Z to perform payroll services for Trailers LLC. Employees of Trailers LLC forwarded pertinent payroll information to K-Z and K-Z generated payroll checks for employees of Trailers LLC. On January 9, 2004 Janatello forwarded paperwork concerning Nevarez titled "Salaried Change Notice" wherein he indicated that Nevarez was "transferred" to K-Z effective January 12, 2004. According to Janatello, he used the word to indicate to K-Z that its payroll department should show in its records that Nevarez was no longer on Trailers LLC payroll. He did not intend to show an official transfer of employment from Trailers LLC to K-Z.

On January 12, 2004, Nevarez began working for K-Z Incorporated ("K-Z"). Nevarez filled out employment paperwork including an employment application, withholding certificate, etc. and also had a routine drug screening performed. He contends he filled this paperwork out after he began working at K-Z and back-dated the forms. However, Nevarez did not believe he had applied

5

for employment there or voluntarily terminated his employment with Trailers LLC. He testified that "[Janatello] said that I was being transferred. I was taking with me everything I had with TN Trailers. That was vacation, pay, seniority, and everything...'You're not getting terminated, you're getting transferred..' That's what I was told." (*Id.* at 89). Nevarez believes this transfer occurred in retaliation for his prior complaints about Abbs.

When Nevarez transferred to K-Z, his accrued vacation with TN Trailers was not transferred to K-Z nor did he retain the same health benefits that he had received at TN Trailers. He was eventually terminated from K-Z.

The record contains a Declaration from Steven L. Brenneman ("Brenneman"), the President of ATC. Brenneman is also the President of TN Trailers, Inc. On April 2, 2004, TN Trailers, Inc. was granted a certificate of incorporation by the Indiana Secretary of State. (Brenneman Dec. ¶2). Trailers Inc. officially purchased the assets of Trailers LLC on April 30, 2004. Neither Nevarez or Abbs received a payroll check from Trailers, Inc., nor were they employed by Trailers, Inc. Similarly, Brenneman avers that ATC did not ever employ Nevarez or Abbs nor have either ever receive a paycheck from ATC.

Based upon these facts, Nevarez filed suit alleging discrimination on the basis of national origin pursuant to Title VII of the Civil Rights Act of 1964 and retaliation. In particular, Nevarez contends that his mandatory transfer from Trailers LLC to K-Z was discriminatory and in retaliation for his complaints about Abbs. Nevarez also contends that Abbs created a hostile work environment to which Parker and Janatello contributed by failing to intervene and discipline Abbs for his behavior.

## **DISCUSSION**

**Motion to Strike**

Defendants have filed a motion to strike various statements in the Plaintiff's Statement of Genuine Issues contending that many of the statements are conclusory, constitute inadmissible hearsay, or are irrelevant. The court has not included in its factual recitation many of the statements to which the Defendants object, especially those statements that are irrelevant to the outcome of the present motion. As a result, the motion to strike statements that are irrelevant is DENIED as MOOT.

In other portions of the motion to strike, defendants have asserted that certain of the facts are hearsay and thus, must be stricken. However, many of these facts do not constitute hearsay at all but are rather offered, not for the truth of the matter asserted in the statement, but for the effect on the hearer. See Fed.R.Evid. 801(c)(3). To the extent that inappropriate hearsay evidence has been offered, the court has not included it in the factual recitation. Accordingly, the motion to strike hearsay statements is DENIED as MOOT.

**Title VII Claims**

Turning now to the merits of the claims, Title VII protects employees from employers who "fail or refuse to hire or ... discharge any individual, or otherwise ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ...national origin." 42 U.S.C. § 2000e-2(a). Discrimination includes claims of harassment creating a hostile work environment and claims that an employer retaliated against an employee for complaining of perceived discrimination.

Defendants move for summary judgment on all of Nevarez's claims contending: first, that no cause of action lies against ATC or Trailers, Inc. because neither of these entities were

7

Plaintiff's "employer" as that term is used in Title VII; second, that Nevarez has not established a prima facie case of discrimination; third, that Nevarez was not subjected to a hostile work environment; and fourth, that Nevarez did not engage in protected activity sufficient to support a retaliation claim. Each of these contentions shall be addressed in turn.

**(1) <u>The Employee-Employer Relationship under Title VII</u>**

As noted, defendants contend that neither Trailers, Inc. or ATC employed Nevarez and thus, neither entity can be held liable for discrimination against Nevarez. Nevarez appears to concede that neither of the above entities paid him any direct remuneration or formally hired him but nevertheless urges the Court to recognize ATC and Trailers, Inc. as joint employers of Trailers LLC.

Title VII defines "employer" as "a person engaged in an industry affecting commerce ... and any agent of such a person." 42 U.S.C. § 2000e(b). Although it seems clear that neither Trailers Inc or ATC were Nevarez's direct employer, "[t]he term 'employer' has been construed liberally under Title VII, and does not require a direct employer/employee relationship." *Laurin v. Pokoik,* No. 02 Civ.1938, 2004 WL 513999, at *4 (S.D.N.Y. Mar. 15, 2004). *Nelson v. Beechwood Organization* 2004 WL 2978278, *4 (S.D.N.Y. 2004).

The federal courts have adopted a relatively expansive approach to liability in the context of employment relations and civil rights, which allows courts to determine whether two employers can be considered "joint employers"[4] for purposes of Title VII liability. *See Laurin,* 2004 WL

---

[4]The plaintiff's argument builds on recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer. These doctrines are sometimes called the "single employer" (or "single integrated employer") and the "joint employer" doctrines. The labeling can be deceptive because the terms are used in numerous contexts, such as union representation, responsibility for violations of the Fair Labor Standards Act, and, as here,

513999, at *4-*9. Defendants contend that the facts reveal no such "joint employer" relationship and thus, ATC and Trailers, Inc. should be relieved from defending this lawsuit.

Recently, the Second Circuit in *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2nd Cir. 2005), discussed the concept of "joint employers" in the context of Title VII cases:

> In a "joint employer" relationship ... "there is no single integrated enterprise. A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they ... handle certain aspects of their employer-employee relationship jointly." *Clinton's Ditch,* 778 F.2d at 137 (citing *Browning-Ferris,* 691 F.2d at 1122). Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.

*Id.* Four factors determine whether two entities may be held liable as a joint employer: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Skidmore v. Precision Printing & Packaging Inc.,* 188 F.3d 606, 616 (5th Cir.1999) (citing *Radio Union v. Broadcast Serv.,* 380 U.S. 255, 257, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965)). "Traditionally, the second of these four factors has been considered the most important, such that courts have focused almost exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?" *Id.* at 617 (citing *Schweitzer v. Advanced Telemarketing Corp.,* 104 F.3d 761, 764 (5th Cir.1997)). The determination is fact-intensive. *Vance v. Union Planters Corp.,* 279 F.3d 295, 297 (5th Cir.2002).

---

Title VII liability. Notwithstanding the same label and some core similarities between those contexts, the doctrines might differ significantly in different contexts.

9

Here, Nevarez contends that "there is joint control and an inter-relationship between and among all these companies, such that all of them must be considered the 'employer' of Nevarez." (Resp. at p.2). Nevarez points to the defendants' position statement to the EEOC wherein the defendants admit that ATC entered into a management contract to operate with Trailers LLC a few days prior to Nevarez's alleged transfer to K-Z. Defendants ignore the alleged management contract and respond by saying that since the official sale of Trailers LLC to ATC was not consummated until April 30, 2004 or months after the alleged transfer, ATC cannot be held accountable under a joint employer theory.

The court cannot agree. The fact that ATC was the managing entity of Trailers LLC at the time of the alleged transfer, at the very least, implies some commonality of management or interrelationship of operations from which a jury might conclude that ATC was, in fact, a joint employer of Nevarez for a few days. Moreover, the timing of Nevarez's alleged transfer, only days after ATC began managing Trailers LLC gives rise to a suspicion that perhaps there existed some management overlap. As noted above, whether two employers can be "joint employers" is a fact intensive inquiry, and under the record presently before the court, summary judgment cannot be granted to ATC..

The same is not true for defendant Trailers, Inc. The record on the whole demonstrates that Trailers, Inc. did not have a corporate existence until April 2, 2004 when it was granted a Certificate of Incorporation by the Indiana Secretary of State. Since this entity did not even come into existence until after Nevarez's transfer, it cannot be held liable under a joint employer theory. Accordingly, the Defendants' Motion for Summary Judgment will be GRANTED as to Trailers, Inc.

**Discrimination Claim**

To survive the motion for summary judgment, Nevarez need only raise an inference of discrimination. *Fuka v. Thomson Consumer Elec.,* 82 F.3d 1397, 1402 (7th Cir.1996). With respect to the Title VII, he may do this by various methods recognized in this circuit. Under the direct method of proof, there are two types of permissible evidence. First, there is direct evidence, or evidence that, if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir.2003) (internal quotation omitted). Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (internal quotation omitted). The second type of permissible evidence which relies more on circumstantial evidence and allows a plaintiff to prevail by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Illinois Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir.2004) (citing *Troupe v. May Dep't Store Co .,* 20 F.3d 734, 737 (7th Cir.1994)).

Nevarez does not purport to have either of these types of evidence. And thus, he must navigate through the oft-recited *McDonnell-Douglas* standard:

> First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a 'legitimate, nondiscriminatory reason' for discharging the plaintiff. Finally, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

A plaintiff successfully proffers a prima facie case of race/national origin discrimination when he shows: (1) that he is a member of a protected class; (2) he was performing according to the employer's legitimate expectations; (3) plaintiff suffered an adverse action; and (4) similarly situated non-Hispanic individuals were treated more favorably.  Here, Defendants do not challenge that Plaintiff meets the first and second prongs of the prima facie case.  What Defendants do challenge is the third prong, that Nevarez voluntarily quit employment at Trailers LLC and thus, there was no tangible employment action taken by Trailers, LLC that was adverse to Nevarez.

The record contains facts that both support and undercut the Defendants' assertion.  For instance, the record contains employment forms with K-Z that suggest a voluntary application of employment by Nevarez.  There are also facts in the record, namely Nevarez's testimony that he was told that he was being transferred and the Salaried Change Notice, which support the contention that Nevarez was, in fact transferred.  This being the case and assuming the facts in a posture favorable to Nevarez, a genuine issue of material fact exists as to whether Nevarez was transferred or voluntarily terminated his employment with Trailers, LLC.

Moreover, because the facts show a reduction in benefits to Nevarez (he lost his accrued vacation time and his health benefits), a reasonable jury could conclude that a transfer, if it occurred, was adverse to Nevarez.  *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 532 (7th Cir 2003) (to show an adverse employment action the "employee must be able to show a quantitative or qualitative change in the terms or conditions of employment.")  Thus, Nevarez has raised a genuine issue of fact to avoid summary judgment on this element of the prima facie case.

Next, Defendants contend that no similarly situated non-Hispanic employee was treated more favorably than Nevarez. First, for these purposes, Defendants concede that the facts read

favorably to Nevarez raise a factual issue as to whether a transfer occurred.  Yet, Defendants overlook the fact that Abbs, a non-Hispanic employee, comparable to Nevarez in his position as a manager, was not transferred to K-Z as allegedly occurred for Nevarez.  Defendants instead point out that Abbs was not paid more than Nevarez at the time of the transfer nor did he receive a pay increase after Nevarez left Trailers LLC.  Defendants apparently use this to demonstrate that Nevarez's absence from Trailers LLC (be it by transfer or not) did not result in more favorable conditions for Abbs.  Neither of these factors are persuasive, however, since it is the fact that Abbs, a non-hispanic,  was, as far as this court can tell, similar in all respects of employment to Nevarez and he remained employed by Trailers, LLC that makes him more favorably treated than Nevarez.  Thus, Nevarez has met his burden on this prong of the prima facie case.

Since Nevarez meets the prima facie case requirements for race/national origin discrimination, an inference of discrimination arises, *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir.2000),  which  "merely shifts the burden of production to the employer to produce evidence of non-discriminatory reasons for the challenged conduct."  *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 562 (7th Cir. 2004).  "But this burden is also quite light; the employer need not persuade the court that he was actually motivated by the reason he gives and the mere articulation of the reason rebuts the prima facie case and puts the onus back on the plaintiff to prove pretext."  *Jones v. Union Pacific R. Co.* 302 F.3d 735, 742 (7th Cir. 2002) (citing and quoting *Pilditch v. Bd. of Educ. of the City of Chi.,* 3 F.3d 1113, 1117 (7th Cir.1993); see also *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir.2004)  ("The employer's burden is 'exceedingly light.'" ).

Here, Defendants have not met even this "exceedingly light"  burden of production since it is their position that they did not transfer Nevarez at all, he quit.  Since Defendants have not

provided any justification for the transfer other than "it didn't happen" the burden of production as to pretext does not shift back to Nevarez and the inference of discrimination is not dispelled. *See Millbrook v. IBP, Inc.* 280 F.3d 1169, 1174 (7th Cir. ,2002) ("Once this burden of production is met, any inference of discrimination evaporates."). Indeed, because the pretext analysis focuses on the legitimate, non-discriminatory reason proffered by the Defendant, the absence of such a reason makes it impossible for pretext to be shown. *See Freeman v. Madison Metropolitan School Dist.* 231 F.3d 374, 379 (7th Cir. 2000) ("After holding that Freeman indeed met his *prima facie* burden, the court did not pause to consider whether evidence was introduced that MMSD had a legitimate, nondiscriminatory reason for the challenged action. Instead, the court considered only whether Freeman had ultimately proven discrimination. That step is critical, not only because MMSD bears the burden of production at that stage, but because the pretext analysis necessarily focuses on the reason provided."). Accordingly, since an inference of discrimination exists and has not been rebutted, the Defendants' motion for summary judgment on the national origin discrimination claim must be DENIED.[5]

**Retaliation**

For many of the same reasons as above, the retaliation claim can also not be resolved on summary judgment. An employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method. *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 -904 (7th Cir. 2005); *Sitar v.*

---

[5] It is noteworthy that the record of an intention to discriminate by the Defendants on the basis of national origin is slim. There has been no evidence presented to this court that the transfer, assuming it occurred, was motivated by the Plaintiff's hispanic national origin. Nonetheless, whether the record at trial supports such a conclusion is a factual issue for the jury to resolve.

*Indiana Dep't of Transp.,* 344 F.3d 720, 728 (7th Cir.2003). The direct method requires the plaintiff to show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action taken by the employer; and (3) a causal connection between the two. *Id.* Under the alternative indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: (1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity *Stone v. City of Indianapolis Public Util. Div.,* 281 F.3d 640, 644 (7th Cir.2002); see also *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005).

There can be no question that when Nevarez complained about perceived race discrimination, he was engaging in activity protected by Title VII. Indeed, "only a groundless claim 'resting on facts that no reasonable person possibly could have construed as a case of discrimination' could not constitute a statutorily protected activity." *Firestine v. Parkview Health System, Inc.* 388 F.3d 229, 234 (7th Cir. 2004). A reasonable person in Nevarez's position could have believed that repeatedly complaining to a manager that your subordinate will not perform his job, in part, because the subordinate states that he "won't work for a Mexican," clearly falls within the realm of protected activity. *See Firestine,* 388 F.3d at 234 (quoting *Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752 (7th Cir.2002) ("Only a groundless claim 'resting on facts that no reasonable person possibly could have construed as a case of discrimination' could not constitute a statutorily protected activity.). Likewise, there can be no dispute that his transfer, to the extent the jury concludes one occurred, qualifies as an adverse employment action, since he lost his health benefits

15

and accrued vacation time in the process of the transfer.  *See Haywood.* 323 F.3d at 531 -532.[6]

This leaves causation, or a demonstration of sufficient facts giving rise to an inference that "but for" the plaintiff's complaints about Abbs, he would not have been transferred.  Here, too, a genuine issue of material fact precludes summary judgment in favor of Trailers LLC.  According to Nevarez's own testimony which must be credited here, within a month of his complaint about Abbs's behavior to Janatello, Janatello told him that he was being transferred, in essence, to "get him away from" Abbs and the new management that might be more favorable to Abbs.  Abbs and Nevarez had a history of not working well together and the jury could certainly draw the inference that after Nevarez complained to Janatello, Janatello decided to split Abbs and Nevarez up by transferring Nevarez to K-Z.  Although couched in terms of "helping Nevarez," a jury could reasonably conclude that Janatello's "help" was really an attempt to get rid of the complainer rather than deal with Nevarez further.  Accordingly, the Plaintiff's retaliation claim must be submitted to a jury.  The Defendants' Motion for Summary Judgment as to the retaliation claims is hereby DENIED.

**Hostile Work Environment**

Finally, Nevarez claims he was subjected to a hostile work environment because of his national origin.  To prevail on a claim of national origin discrimination based on a hostile work environment theory, a plaintiff must establish that: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race [/ national origin]; (3) the harassment unreasonably

---

[6]A lateral transfer that does not alter an employee's title, salary, benefits, or seniority does not constitute an adverse employment action.  *O'Neal v. City of Chicago,* 392 F.3d 909, 913 (7th Cir.2004) (lateral transfer to essentially equivalent position normally does not suffice as adverse employment action). However, in this case, Nevarez contends that the alleged transfer reduced his benefits and his seniority.  Under such circumstances, a jury could conclude that Nevarez was subjected to an adverse employment action.

interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being; and (4) there is a basis for employer liability." *Hrobowski v. Worthington Steel Co.,* 358 F.3d 473, 476 (7th Cir.2004). Further, Nevarez must establish that the objectionable environment was both subjectively and objectively offensive. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). "Another method of framing this issue, as we have done in some of our opinions, is to ask whether the harassing words or conduct were 'severe *or* pervasive,' although the substance of the inquiry is the same either way." *Hrobowski,* 358 F.3d at 476.

In the present case, Nevarez has not demonstrated a genuine issue of material fact under the guidelines above. First, Nevarez's evidence of unwelcome harassment consists of one comment by Abbs relating to Nevarez's national origin as well as general insubordination by Abbs because Abbs allegedly didn't want to work for a "Mexican." "When deciding whether a hostile environment exists for racial harassment purposes, this court must evaluate the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Nevarez's allegations simply fall short of the type of workplace trauma that would establish actionable harassment. *See Rogers,* 320 F.3d at 752 (quoting *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428 (7th Cir.1994)) ("the workplace that is actionable is the one that is hellish"). The complained of conduct occurred for a period of two or three months during which time Abbs did not act in a threatening manner and made only a single offensive utterance. While Abbs, according to Nevarez, refused to interact with him or take

17

direction from him, there is no evidence that this adversely affected Nevarez's own job performance. Indeed, there is no record that as a result of Abbs discriminatory conduct Nevarez was reprimanded or disciplined by his employer.[7] Accordingly, the court cannot conclude that the discriminatory conduct was either severe or pervasive enough to constitute actionable harassment. *Marrero v. Goya of Puerto Rico, Inc.* 304 F.3d 7, 19 (1st Cir. 2002) (quoting *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir.2000) ("[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins.").

## CONCLUSION

Based on the foregoing, the Defendants' Motion for Summary Judgment is GRANTED on all claims as to TN Trailers, Inc. With respect to TN Trailers, LLC and ATC, the Motion is DENIED as to the discrimination and retaliation claims. The Motion is GRANTED as to the hostile work environment claim. The Defendants' Motion to Strike is DENIED as MOOT.

Entered: This 26th day of April, 2006

William C. Lee
United States District Court
Northern District of Indiana

---

[7] This is an atypical hostile work environment case. Typically, the plaintiff asserts that the discriminatory conduct is the direct result of affirmative acts by the harasser. For instance, in the sexual harassment context, the harasser is alleged to have sought out the plaintiff and made attempts to demean the plaintiff through sexual innuendo, touching, etc. In this case, the plaintiff is essentially asserting that he was subjected to a hostile work environment because of the absence of interaction between he and Abbs.